Case No. 24-1948 Frazier v. X Corp. Case No. 24-1948 Frazier v. X Corp.    Mr. Keneally, whenever you're ready. Thank you, Your Honor. May it please the Court. The basic principle of the Federal Arbitration Act is that arbitration is a matter of contract. Section 4 of the Act, therefore, permits courts to order arbitration only in accordance with the terms of the party's agreement and only in the manner provided for in their agreement. Here, the district court's order requiring X to pay all ongoing arbitration fees violates those clear statutory restrictions in two separate ways. First, the district court gave binding legal force to a decision made by a different decision-maker than the one specified in the agreement as having the authority to make this decision. The contract is clear. The individual arbitrator has all authority to resolve any dispute regarding the apportionment of fees. But doesn't the association have its own right to make a determination of the terms on which it will agree to administer the arbitration? Well, in this case, the petitioners are the ones who came into court and are asking the court to put the force of law of a court order behind the arbitration association's determination about whether to hear that. Is that what they're asking, or are they asking us to honor the arbitration association's application of its own rules subject to the possibility that an arbitrator might conclude that one party is paying more than its fair share of fees and make an order accordingly? I think that they're asking you to ask the district court to put the force of law behind the determination by JAMS about what the apportionment should be. There are cases, and they're cited in the briefs, where a party attempts to lift an arbitration stay or defends against a motion to compel arbitration based on an arbitration association's determination that we don't want to go forward, we don't want to accept this arbitration because it would violate our policies. And if that were this case, we wouldn't be here because that would allow, this is actually the Samsung case in the Seventh Circuit, that would allow the petitioners to bring their claims in court. Well, that could become this case, right? I mean, that option is still on the table as something that might happen. That's exactly right, Your Honor. We think that the way that JAMS made a determination here really left the petitioners with two options. If they really wanted arbitration, then they could advance the fees, as JAMS told them they could, and then they could even seek a reality. You could do the same thing if you really wanted arbitration, which is usually what the employer wants. You could advance the fees and then put your case to the arbitrator, and the arbitrator can say, well, sorry, that's not right, and make the other side pay up, right? We could do that here. So you've got the same thing. And so the question is, does anybody really want arbitration here? But I want to ask another question. I wanted to hear the second alternative just briefly. You were going to say there's two alternatives. One is to front the part of the fee, and what was the second? State court action? Not a state court action, but then they could ask JAMS to terminate the arbitration, and then they could bring their claims in a court case. So like the Samsung posture. Exactly. So in other words, to go to court is the other option. And then if they went to court, then we're in court, right? Or do you have the right to then say, no, we should be in arbitration? No, I think at that point, if the arbitration is terminated, we wouldn't have an ability to say that the arbitration needs to be ordered. I think we would be stuck with that. We would be in court, and they would go forward in court. With a class action, presumably. If they could satisfy the requirements of Rule 23. Right. But when you say that this question is solely for the arbitrator, suppose they did advance the fees, as apparently one person did at one point, and the arbitrator decides that actually, no, you should be the ones paying the fees. And when some final award happens, even if you win on the merits, you still have an order from the arbitrator to pay the fees. Are you reserving the right to come into court then and say that was in manifest disregard of the law? I mean, do you really mean it when you say this is for the arbitrator? No court can look at this question ever. I can't see how we could make the argument after an arbitral award that the arbitrator erred so badly that under the FAA, which is very deferential to arbitral awards, that there would still be a basis. Believe me, I've seen it happen and I've seen worse in terms of relatively frivolous arguments when somebody who insisted on arbitration didn't like the result. We get a lot of such cases. They don't usually win. But you're saying you don't think that that's something that you can see yourself ever doing. And if we decide this case in your favor with some reliance on that, you might also add judicial estoppel to the list of reasons why you couldn't make such an argument. I think that's a fair assessment, Your Honor. I mean, just to give a little context of why this is the unusual case where the employer doesn't really want to be in arbitration, we have 2,000 plus arbitration demands. And just the filing fees alone cost millions of dollars. Before you even get to the arbitration fees, which will add that by an order of magnitude. So we're talking about a huge amount of money that the arbitrations are going to cost here. And that's why this is an unusual posture where the employer isn't like, well, please defend this arbitration. For a single case, how much is required to get to the assignment of an arbitrator? So what are we talking about for one case? I think I saw the Zhang case was 5,000. The Zhang case, 5,000 per side. And I don't know that the full cost, it actually ended up costing $10,000. I don't remember what the hours the arbitrator spent on the issue were. And what's the amount at issue for an individual case? Six months severance is six figures-ish. It depends on the employee, yes. It could be. I mean, some of these employees were very highly compensated. So you could have a larger amount. And then some of the cases involve statutory claims as well. And how about for the initial fee? How much did Twitter pay and how much did the individual employees pay? My understanding is that the initial fee is $2,000 and that JAMS allocates $1,600 of that to the company and $400 of that to the claim. So it was treated as a mandatory employment condition kind of case for the purposes of the initial filing fee? JAMS treated it that way, yes. And you did not dispute that allocation at the time of the initial fee? No, I think we did. And this is in the letters that we exchanged, AA83, where we asked JAMS to stop invoicing these cases, these arbitrations, in accordance with the minimum standards and that they should instead be- I see. So that's what triggered the letter exchange. Yes, exactly. But however many cases there are out there, and however much all of these fees and all of the lawyers' fees for litigating the cases are going to be, you're either going to have that many thousand arbitrations or you're going to have that many litigations, right? Well, not necessarily. If the litigations are brought as putative class actions, then we would defend against a motion for class certification. But that's why Rule 23 exists, is to be able to- Yes, but you will dispute that. And one of the reasons why you wanted arbitration was to prevent that, right, and make everybody file their own individual cases. So I'm just having a little trouble understanding what the strategy is here. This is a situation where the company, like most companies, appeared to prefer arbitration. That's clearly why they didn't give one form to the employee that says, You want to go for a dispute resolution program or you want to not do that? Instead, they have to check that box and then do something else to opt out. And that's perfectly reasonable for you to do it that way. But the obvious reason is to give it a nudge. Everybody knows that that's how you- If you start with somebody with a presumption of doing something, most people will wind up sticking with it. So you wanted it. But we also have to assume that they wanted it, right? It's a contract. Both sides wanted arbitration. Do we have any obligation under the Federal Arbitration Act to try to facilitate making that arbitration happen? That's the kind of thing that employers and businesses dealing with consumers are always telling us, that there's a preference for arbitration, that we want to try and make it happen. I think the strongest argument for the district court's resolution is this would allow one party to effectively close off arbitration. That was the district court's- Yeah. You can tell me why he's wrong that that's what the effect of this would be. But if that would be the effect, are you suggesting that we don't have any- We shouldn't consider that because that's not our role. Yes. That is my submission. And the case I would point to for this tradeoff between efficiency and enforcing the agreements as written is the Dean Witter-Reynolds v. Byrd case that we cite in our briefs, where the Supreme Court dealt with this exact tradeoff where the question was, we have the FAA's policy in favor of speeding efficient resolution of disputes, but we also have the FAA's policy in favor of enforcing private agreements as written. And in the case of a conflict between those, Dean Witter-Reynolds says, the preeminent concern, that's its phrase, is enforcing the party's contract. And because we think here that the party's contract doesn't permit the relief that the district court ordered for two reasons, that's why that has to override any concern with moving the arbitrations forward, which is the district court's primary concern. We've been talking about who has the authority under the contract to decide the apportionment of fees, but the second argument we have for why the district court's order went awry here was because on the merits, Jams' decision is simply incorrect. I think both sides now agree that whether the minimum standards apply or whether Rule 31C applies depends entirely on whether these contracts were required as a condition of employment. They say at page 30 of their opposition brief that the Jams' rules tell you how to apportion fees. But the contract was a condition of employment. They had the opportunity to opt out later, but they had to sign the agreement that is the basis for the arbitration award. They could have changed their minds later, but they had to do that as a condition of employment. Why is that a reasonable interpretation of the contract? Well, because we've cited over a half a dozen cases involving different contexts where courts have looked at opt-out arrangements like the one we have here and they've analyzed whether contracts with that are conditions of employment, are adhesive contracts, and they've all said no. The only case that has said the opposite is this case. And we cited the Rosa case, which came out after this case from the District of New Jersey, where the district court construed the DRA, the Twitter Dispute Resolution Agreement, and said it was not required as a condition of employment and, therefore, the minimum standards. Of course, your problem with all of this is that nobody has a contract with Jams, I take it. If Jams says we don't want to do this because we think this violates our rules, then the outcome, I think you would say, and I'm inclined to agree until I hear from the other side anyway, that you're right, is then the entire arbitration contract blows up because if Jams won't take it, the one for sure meaning of we can only compel arbitration under the terms of the contract is we can't say, well, you really want an arbitration, so go to AAA and see if they'll do it or see if you can pick an arbitrator out of a hat and agree on them and go to that party for arbitration. It's over. There's not going to be any arbitration. Yes, and that's what happened in the Bedgood case that petitioners cite in their brief from the 11th Circuit and the Hernandez case from the 3rd Circuit. Both of those were AAA cases, but AAA said we don't want to process these arbitrations because we don't think that they comply with our policies, and that was the end of it. I mean, that meant that there was no arbitration. The FAA does have a provision that allows for the appointment of a substitute arbitrator, but no one has asked the court to actually appoint a substitute arbitrator under the relevant standards. So you would have us, the contract, the arbitration agreement says we're going to arbitrate pursuant to the then current Jams rules. Jams, who's not a party to the contract but is a necessary effectuator of the contract from your perspective, says pursuant to our rules, here's what you have to do. You want us to review that. It sounds like, I know it's weird to say de novo when we're not talking about reviewing a judicial decision, but does Jams get any deference in your view to its interpretation of its rules? Is the question whether its interpretation is within the bounds of a potential reasonable interpretation or is the question whether its interpretation is right as we read the contract, or as we read the rules? I think it's the second, and I think that that flows from Section 4 itself, which asks the court, or which limits the court to Section 4, I mean, of the FAA, not the contract. Section 4 of the FAA says that courts may compel arbitration in accordance with the terms of the agreement. So you need to verify that the Jams decision is in accordance with the terms of the agreement. That's interesting, because the terms of the agreement say you're going to arbitrate in accordance with then current Jams rules. And so what you're saying is, so in order, we're essentially incorporating by reference all of the contents. We don't care what Jams thinks its rules are. Well, if Jams had under a rule, under one of its Jams rules, the authority to determine the apportionment of fees, that would be a different case. But they don't have that authority. They have authority to make certain determinations. Rule 11B allows them to determine the location of an arbitration. But that's not what any of the fees provisions of the rules say. At most, all they can do is decide to suspend or terminate an arbitration if the required fees aren't paid. That's Rule 6C. And so, again, if they said we're going to suspend or terminate these arbitrations, if we terminate them, then the petitioners could come and file claims in court. That would be within Jams' authority. But there's nothing in the rules that say Jams gets to decide whether the minimum standards apply. Well, I don't know. I mean, if it's the then current Jams rules, then Jams could change their rules, and you'd be bound by the changes in the rules. Why aren't the Jams rules whatever Jams says they are? And if not quite that, if there has to be some ability to say, no, they can't just say that black means white, if there's some ambiguity, why shouldn't we defer to them on interpreting their own rules, which you guys incorporated into your contract? Well, my main submission is that their rules don't say that they have the authority to make this determination. If anything, Rule 6C says that the arbitrator can then allocate fees. But even if I were wrong about that and it were a possible reading that they have some authority, I'd still say that the specific language in the contract about who gets to determine the apportionment of fees, the arbitrator as a natural person, not Jams as an organization, would supersede the general incorporation of rules. And there have been a number of cases that have said that if there's a conflict between an agreement and an arbitration provider's rules, the specific governs the general. And I think that that principle would fully apply. So that requires us to accept your view that the contract provides for a 50-50 allocation by implication because it's not mandatory under state law. Is that what I'm understanding? No, no. That wasn't what I was arguing. Why I would think that the contract requires a 50-50 split is because of Jams Rule 30A, which says that except as provided in 30C, subsection C, the parties will pay pro rata shares of the fees. So and whether subsection C applies turns entirely on whether the contract is required as a condition of employment.  And they say that in their opposition brief at page 30 as well. But that's a, right. The question, I mean, when you say Jams doesn't allocate to itself the authority to determine that, I'm looking at the minimum standards, and it says if an arbitration is based on a clause or agreement that is required as a condition of employment, Jams will accept the assignment only if the proceeding complies with the minimum standards and then the minimum standards say what they say. I don't understand why that doesn't make it clear that the Jams makes the threshold determination about whether they'll, I guess, accept the arbitration other than through the allocation of fees up front that Jams is calling for. Well, I do think they can decide to decline the assignment, and then we'd be back in court litigating the claims in court. But the Jams minimum standards, I think this is an important part of the minimum standards as it relates to this authority of Jams. The minimum standards say, this is page 4 of the minimum standards, that Jams, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with the minimum standards, it must be conducted by an arbitrator or court. And are there some facts that aren't apparent on the face of this agreement that you think? Well, factual inquiry, in the language I quoted, was just an example of a deeper dive that Jams is saying. No, no, I understand, but you read us that provision, and I'm just trying to understand. I understood that as another reinforcement that Jams is looking at the agreement on its face and making a determination. Is there evidence out there that matters to us in terms of thinking about whether Jams got it right in understanding 31C? I don't know that there's evidence out there that would be required. But I do think whether a contract is a condition of employment is a legal question. It's not a question of interpreting Jams' rules. It is a question that courts confront across a variety of contexts all the time. And the overwhelming number of those decisions, setting aside the decision below, recognize that an opt-out provision makes an agreement not required, makes the agreement optional, as the name suggests, and it makes the contract non-adhesive. So that's not something that Jams is a particular expert in figuring out, because that's a legal concept about the effect of a contract that comes into the courts across their desks all the time. This whole thing feels ironic to me because it feels like so often we see arbitration requirements that preclude class arbitration. And the critique is that's designed to impose greater costs on plaintiffs, and that protects the defendant or the employer in this case. And we have an application of that that because of the way things have unfolded is going to impose greater costs on the employer, and suddenly the employer is in here saying, oh, no, that's not what it means. I'm sorry, that's not even a fair question. It's a commentary. I don't know if you have a response to that. Yeah, and I would say that the class arbitration issue is one where the Supreme Court has said courts should enforce the contracts as written, and they shouldn't attempt to prioritize efficiency in proceedings over the contract language itself. So if we think the contract as written gives Jams the authority to make this preliminary determination or make it within some sort of bounds, then we're done. And I guess under Peregrine compelling arbitration under the terms that Jams is laying out would be the right thing to do. If the contract gives Jams the authority to make this determination? Yeah, if we conclude that the contract gives Jams the authority to make that determination within certain bounds perhaps, subject to clear error review or something, that would be our outcome. Potentially. I don't have an argument against that because it's not we don't think that the contract does that, obviously. Well, I wasn't sure whether you were going to say no. The outcome is we're stuck. I mean, when you look at these other courts that have dealt with it, it's often been in cases where the plaintiffs are trying to get into court, and at that point if they can't get past the arbitration association's threshold agreements, the court's like, yeah, you can come to court. I wasn't sure whether your position was even if we conclude that this is within the scope of Jams' authority, we can't compel arbitration under the terms that Jams is setting, and I wanted to understand if that was your argument, why. I think if the contract supported requiring X to pay all the fees as at least an interim measure, then the court could order that under Section 4, just as if the contract said the parties have to share them 50-50, we could come into court and say that that has to be given effect. But the question is what does the contract say about apportionment of fees? Does it give Jams the authority? It's two questions, right? What does it say about who gets to make the decision? And the second is if we do get to make the decision, is it right? Correct. Yeah, those are the two questions, and we think we went on both of them because the contract says the arbitrator decides apportionment of fees, and we think that the contract, I mean it says on its face that arbitration is not a mandatory condition of employment, and it says that if an opt-out is submitted, you won't be subject to the agreement and you can pursue available legal remedies without regard to the agreement, and there won't be any adverse employment action. So you can have your job and not be bound by this agreement at all. To me, that's the definition of an agreement that's not a condition of employment. Thank you, counsel. You're reserved two minutes for rebuttal. Thank you, Your Honors. Mr. McNerney. Good morning, Your Honors. Christopher McNerney for Petitioners of Helize. The court should affirm the district court's well-reasoned but narrow opinion and hold Twitter to the agreement it drafted, the rules it chose, and the decisions of the arbitral forum it chose to administer those rules and these arbitrations. Twitter's refusal to pay the fees that Jams instructed it to pay has ground these arbitrations to a halt, prevented the appointment of all- Can I ask about that? I mean, for an individual employee, it sounds like we're talking give or take about $5,000 to get to the point where there is an arbitrator where the contract then would kick in and any fee dispute could be decided. So is that a fair characterization of what's at issue for any individual plaintiff? Sure, Your Honor. That is what happened in the Zhang arbitration. It may vary based off of the circumstances. Jams reserves the right to pay different amounts at different times. But so ground to a halt is, I mean, it takes two to tango, and obviously your friend on the other side doesn't want to go either, but you could move this along that way. Your Honor, we could, but the point here is that Jams instructed Twitter to pay. It said that Twitter was obligated to pay, and that interpretation we believe is both consistent with the contract to the sense that it delegates Jams to make those decisions. How is it consistent with the contract? I mean, the contract seems pretty explicit about any disputes about fee apportionment is resolved by the arbitrator, and you're just at an interim stage where you're not quite there yet. Right. That's why, Your Honor, we're talking about interim determinations. And so by that interpretation, if the arbitrator had to decide it, then at this stage there would be no way to enforce any fee mechanism because the arbitrator hasn't been appointed. And so in order to give effect to the intent of the parties to arbitrate, you have to figure out how to determine in that point where I would argue DRA Section 6 does not apply because no arbitrator has appointed, how you determine who has authority. And so you go to the Jams rules, which are incorporated into the DRA, and you have Rule 11C, which gives Jams the power to resolve disputes as to the appointment of an arbitrator, which this is, because this is a dispute that has to be resolved. If the fees are not paid, the arbitrator cannot be appointed. That's because Jams picks the arbitrator, right? Do I understand that correctly? In other words, the two of you couldn't say, oh, here's the Jams list. We like Kathy Roberts. Let's have her. Jams picks the arbitrator. Is that right? My understanding here is that there is an opportunity for the parties to confer over arbitrator. If they cannot do so, then Jams— Well, isn't that another path forward then? If you folks both agreed on who the arbitrator should be, why doesn't that person then become the arbitrator and get to decide this issue? Well, because a commencement letter won't be issued starting the arbitration without the fees being paid. The arbitrator won't decide it without the fees. So Jams has their thumb on the neck of whoever is—of the parties here, because Jams won't start until this happens. And, you know, I think that's rational here because this is a commercial entity that says we need to be paid before we'll start. But, again, I think the takeaway here is that this is the entity that Twitter selected and chose here. But can I just get back to the real fundamentals here? Why is this a motion, proper motion, to compel arbitration? Indeed, to compel arbitration in the way that the parties wanted. The parties agreed to arbitrate. They agreed that Jams would be where the arbitration would take place. And you both showed up at Jams. Where does a court get any authority to do anything more than that? And if Jams has its rules and you get to be at loggerheads with Jams or they get to be at loggerheads with Jams and Jams says goodbye, then you're back in court, which is usually where plaintiffs want to be. What's the big deal? I mean, we're here. We're here. We're free, essentially. Very much smaller initiation fees. We're not free in terms of paying lawyers, but that's going to happen wherever this takes place. So what's the big deal? Why do we have any authority to do more than say go to Jams? But we don't have to say go to Jams. You've gone to Jams. Then Jams does what it does. You guys do what you do. If you have to come back to us, great. We're here and waiting. Where do we get authority? Well, I guess that's the first question. Where do we get the authority to not just send everyone to Jams, but then dictate decisions that Jams should make by making our own determinations, whether it's if we agree with Jams, by evaluating the question even of whether Jams is properly interpreting its own rules, whether Jams is properly interpreting your underlying contractual situation, all of which is under our normal law for the arbitrators. Sure, Your Honor. We are seeking that the arbitration be compelled consistent with the terms of agreement, which is the authority under Section 4 of the FBI. Isn't that scary? If you interpret it that way, doesn't that mean that courts can always find some argument that what the arbitrator is doing is not really what the parties contemplated? And then you can come back and say, wait, we want you to compel the arbitrator to act according to the agreement for arbitration and not make that ruling but make some different ruling about the procedures to apply because that's how we interpret the contract. That would seem to open up a barn door for courts to get into the details of arbitration, wouldn't it? Well, I think that's why the court need only decide the threshold question of whether Jams is empowered here to interpret its own rules in this way. And I think if the court compels arbitration saying that Jams is under the contract, is empowered to interpret its rules, that gets us to the point here is it's saying that Jams is wrong. We don't have to follow what Jams says. And so we're asking to compel and say, well, actually, the agreement you drafted, the rules you picked, and the arbitral forum that administers. But then we're interpreting the contract, which the arbitrators are supposed to decide, and we're interpreting how Jams' rules interact with the contract. Now, I'm just having trouble understanding why that constitutes a dispute that can be resolved up front in a motion to compel an arbitration to which both sides have already purported to submit. Well, I think the first issue is that Twitter is not engaging in the arbitral process. That's why we're here. Yeah, but if we had an arbitrator, if this didn't have the intermediary of Jams, if everyone agreed that it was all going to be decided by a particular rabbi in Brooklyn, and one side then says, we don't like the way this rabbi is interpreting the law, we're going to back out, then that arbitrator makes a decision, and then you come to court if you won that decision and ask for it to be enforced. You know, there are – I'm just concerned. This may seem like a very minor intrusion in this particular case because all that we would be doing is breaking a sort of logjam and directing one party to pay an up-front fee subject to the ultimate decision of the arbitrator that uh-uh, the other side has to pay those fees. Sure, Your Honor. I think there – But that's just – but the theory that you're advancing seems to me to open many more doors than that. Well, I think there's two responses. One, for the example of the rabbi in Brooklyn, we are asking that the other side who picked the rabbi in Brooklyn to abide by that rabbi's decisions, and I think – Yeah, but that doesn't happen normally until after the arbitration is over. If somebody literally – if one party refuses to participate once the parties have started an arbitration before somebody, then the arbitrator makes a ruling, and then there's a process for trying to enforce that. And if there's some complaint that, oh, that arbitrator turned out to be biased in some way, that's something that gets litigated after the fact. But we don't intervene and tell the party, you have to go back to that arbitrator and participate in this proceeding. Once they've shown up, what happens happens in the arbitration, right? Your Honor, I hear your point, but I think when you look at, for example, the Brown case, and you look at sort of like all these different cases throughout the circuits, the way that they can be harmonized is that courts will issue orders deferring to the judgment of the arbitral forum when it's consistent with their rules and doesn't contradict the arbitral agreement. That's the situation here. It's fully consistent with those cases, and that's what we are asking here, and I do think that that is a modest decision. It is consistent with the agreement that was the bargain of the parties, and that's what we are asking. We are asking that for an order saying that JAMS has the authority here and it should be deferred to for the reasons that is what Twitter contracted for and for the reasons that JAMS is in the best position to understand its rules and how to interpret it. So if there's any time there's a dispute over initial fee payments before an arbitral, you know, the arbitrator is appointed, if that were the provision at issue, that is something that is covered by FAA Section 4. It's a procedural fee dispute. I think that dispute is covered by FAA Section 4 because the contract says that JAMS will make these determinations, and we're seeking to compel arbitration consistent with the contract. We're asking that the contract to arbitrate be followed, and that's why it falls under the authority of FAA Section 4. We're not asking for, I think what Twitter is asking for, is a much more problematic position because it is asking to go against what it bargained for. It is asking to go against the rules that it selected, and when it shows that JAMS decided this decision, it's saying, no, we don't agree with that anymore. We want a different outcome. I think in that case, that's where courts start to have an issue with whether they have the authority to do so because you're going against the contract. You're not compelling the contract at issue into arbitration. The difference here is we are asking for arbitration consistent with the contractual terms, and I think that applies both to the threshold issue of the fees and also to the interpretation of condition of employment. Can we switch over to that? I'm just having a hard time kind of at a common sense level understanding how something you don't have to do can be considered a mandatory condition of employment. Sure, Your Honor. It's a logical question. Yeah, the process for first response is the court need not reach it if it affirms on the first basis. If we go to that issue, it's consistent with the plain text of the provision that this agreement was required as a condition of employment because you had to sign it to work at Twitter. If you do not sign it, you do not work at Twitter. You can sign it with the opt-out box checked. Yes. You stapled the opt-out form to it? I don't know the mechanics. I think there's a dispute. Twitter argues that you could potentially opt out first or something before you sign it. There's no evidence of anyone ever doing that in the record. What is clear is that you get this packet. You sign it, you send it, and then you start working. So the way all the processes are pushed is towards signing it. That phrase is consistent with what the JAMS rules say. But I think beyond that, we're not in the world of interpreting court decisions as to unconscionability and trying to get out of arbitration. The cases that talk about that don't really help us here because the question we're faced with is JAMS interpreting its rule and whether it had the authority to. And here we are fully in the world of the types of decisions that courts defer to the arbitral form or the arbitrator to make because they are in the best position to understand what their rules are trying to do and why they imposed them. And there are a lot of signals here from the general counsel's letter to the last section of the minimum standards that all show that what JAMS is really concerned about here is contracts that are not negotiated, that are imposed on a party where they do not have the benefit of a lawyer. And in that situation, they don't want a situation where the petitioner may have to pay an excess amount of fees that may be grossly different than what they would have in court. That is the concern. It was a reasonable concern for them to have. But most importantly, this is JAMS interpreting its rules. And this is the place where, respectfully, I believe that the court should not be in the job of going in and saying, JAMS, you are wrong as to what you mean as to the rules you drafted. So this is kind of maybe we think of this as a subset of the DRA Section 6 fee provision that's to be decided by an arbitrator. That's what happened in the Zhang arbitration, right? It was decided by a Zhang arbitrator. The minimum standards apply there. Yes. Yes, Your Honor. And is the – well, part of the problem, at one point in this case, there was an argument, which I think has now been abandoned, that now that we've had an arbitrator decide this in a case, the court should decide that collateral estoppel will apply. But, of course, that's an issue that would be decided by future arbitrators. What Twitter is actually asking is that in all of these thousands of cases that are out there, the person should front the fee, and then the arbitrator should have to go through the process of making a decision as to whether Judge Moss was correct or not, or whether they agree with that or not. And then things will proceed accordingly, possibly differently, in each individual's case. Is that what they contemplate happening, or do you understand what happened in others? Yes. Because the problem is one might think that after three or four people anyway followed Mr. Zhang's example, if they all won, sooner or later the arbitrators are going to start applying collateral estoppel and say, come on, get out of here. Well, Your Honor, so we're not arguing it now, and this gets back to why I say the district court's decision was a very narrow one, because the parties agree that this is an interim decision to get you to the point where you can have the arbitrator. But I think it's interesting to focus on that point for a second, where what Twitter is arguing is that it should be a different interim allocation. It should be a 50-50 split at the start before an arbitrator was appointed. But that argument, too, requires someone to decide. No arbitrator has been appointed. Someone has decided. That would be a decision for the arbitrator to make. At final decision. Right. But a portion means decide what portion goes to each side. It doesn't automatically say 50-50 or anything else. So my point is, one, the argument that it should be 50-50 at the start itself concedes that someone has to decide. If it's not the arbitrator, because the arbitrator hasn't been appointed, it has to be Jams. When you get to that point, the fact that a portion. There's only one entity that I think pretty clearly shouldn't be the one deciding that, and that's us. That's the courts, right? Because whatever's going on between you and Jams is between you and Jams, and Jams can do what it likes. And if it decides that its rules mean this and the parties don't like it or a party doesn't like it, then we come back to the courts, which are the default decision-makers anyway in all of these situations. The question is just have the parties agreed to something else. And if it turns out the agreement was illusory for some reason, or what you agreed to was to arbitrate before a body, which for some mysterious reason thinks it would like things to be fair, as between employees and employers, and they want to enforce that preference, that breaks down. Then you're back where you all belong. So, Your Honor, just to that, we may end up being back in court. We're not there now. The cases have not been dismissed. We have the Billy V. Coverall case where, in a similar situation, because it hadn't been dismissed when the petitioner sought to go to court, the Second Circuit didn't let them in. And so we are limited in our options here. And we also have the situation where it is not clear, really, what Twitter would or wouldn't do as to the arbitrations if it gets a order saying that this is what its obligations are. It has paid the arbitral costs in California. It's taken the position here that, under the contract, it doesn't have the obligation to do so. So what we're asking for is an order saying that compelling arbitration consistent with the agreement means what you bargain for, which is jams making these determinations. Thank you, counsel. Thank you, Your Honor. We'll hear from both. Can I jump in from the start? Sorry, I'm sort of thinking about this who decides issue. In Brown, did we get it right? I know it's an unpublished disposition. We're not bound by it. But in the Brown v. Paragon Enterprises, did the court respond properly to that situation? I think so, Your Honor. Part of what the court was concerned about there was that the AAA didn't comply with its own procedure in terms of terminating the arbitration. There's a multi-step process. I take it similar to jams. They get to allow another party to front the fees. And that was, I think, part of what the court was concerned about there. There you also had a very ---- Okay, but the AAA says, you know what, we're not going to take this because these are the terms in terms of allocating the fees on which we're going to take this order. And the court doesn't say, well, I guess they're not going to take it. Parties must go to, you know, come back to court and resolve it here. The court says, no, we're essentially deciding you, AAA, are wrong about how you're interpreting the rules in the agreement, and therefore we're going to compel the plaintiffs in that case to pay the money because that's how we interpret the arbitration agreement. Go forward. That's part of our order compelling arbitration. Why isn't this the mirror image of that where we're being asked? I mean, and I guess maybe you agree with that. We're being asked to decide whether JAMS got it right, and if we think JAMS got it right, then we should compel your client to pay the fees and go forward in the arbitration. I guess that would be the analogy, and I guess that's not inconsistent with your position. I don't think it's inconsistent with our position. I do think, just to pick up where Mr. McInerney ended, he continued to say that all they're asking for is that X be held to what it bargained for, which was to have JAMS make these determinations. But, of course, JAMS isn't empowered to make these determinations under our interpretation of DRA. The arbitrator is the only one who does that, and under even the district court's reading, the arbitrator is different from JAMS as an organization, and I'm not aware of any case. Well, but you're pointing, I understand, I mean, I think we're going to start looping, but there are provisions in the agreement that say we're going to follow JAMS rules, and JAMS rules are very clear that JAMS, the organization, has the authority to make the determinations about these allocations of costs for the purpose of even accepting the referral and appointing an arbitrator. Why isn't that equally part of the contract in the other provisions you're pointing to? I just don't read the rules that way, and Mr. McInerney cited 11C of the JAMS rules, which is about disputes over the appointment of the arbitrator, but a lot of arbitrators get appointed without any dispute whatsoever. A contract here does allow the parties by mutual agreement to decide on a particular arbitrator, and then the JAMS rules clarify how JAMS will resolve a dispute over the appointment of the arbitrator. That's Rule 15. There's a very extensive process for how JAMS goes about that, but none of that has anything to do with resolving disputes over who owes what fees. Doesn't FAA Section 5 also provide for that as well? Yes, it does, Your Honor, a substitute appointment. But Rule 23F of the JAMS rules allows the arbitrator to allocate fees at the end as part of the arbitral award. So even the rules themselves contemplate the arbitrator making this kind of determination. Everyone understands the arbitrator is going to make the decision. The question here is solely about interim relief. What has to happen in order to get to an arbitrator that is simply a tentative decision? I mean, to me, the most attractive thing about the district court's resolution is it doesn't actually make anybody do anything that the arbitrator doesn't approve of in terms of the ultimate allocation of responsibility. It's just about who should front the fees. And we've got a kind of standoff where neither party seems to be prepared in these particular cases to front the fees. And if the result of that is no arbitration, that seems inconsistent with the fundamental desire of the parties to resolve this in arbitration rather than in court. And with the policy of the FAA, which folks on your side of the aisle are always telling us favors arbitration. Well, I'd go back to the point I said earlier that I think that that favoring of arbitration doesn't override the particular terms that the parties agree to arbitrate under. And here, that's why I think where we are where we are. Of course, the end result will be that there will not be arbitration unless, of course – well, yeah. I mean they've said they're not going to pay. You said you're not going to pay the upfront fee. And so everyone will be back in court. I don't have a problem with that. I was asking does the FAA have a problem with that? And don't employer – the employers of the world seem to have generally an interest in that being the way things go? Well, if the employers of the world want that in a given case, they can agree to front the fees. Mr. McInerney said that the district court's decision here is very narrow, but I think under their interpretation of the JAMS rules, even if you had an agreement that was individually negotiated with representation of counsel and even if it couldn't have been clearer that the fees were going to be split 50-50, JAMS could make the determination that we think that violates our policies today to allocate fees that way. And then that party could go into court. But nothing would keep them from making that decision. They could make that decision and refuse to take the arbitration. Yes, but the second step here, which is why I think the district court's order is so potentially broad in its implications, is that the other side could come into court and say, hey, JAMS gets to decide this under its rules. It's made a decision, and now you need to force the arbitrator to comply with that so we can get the benefit of JAMS's determination. That's how we see this case. You need to get JAMS to make that ruling so that the arbitrator can then ultimately decide whether JAMS was correct or not. Well, maybe, maybe not. Which is what the parties bargained for. But JAMS said here that if the arbitrator thinks that the minimum standards don't apply, the arbitrator can raise that to JAMS's attention, and JAMS will make the final determination, which is inconsistent with how JAMS normally treats the arbitrator's decisions. In Rule 11a, the arbitrator's decisions are final. But here, for whatever reason, they did not say that. They said that JAMS would have the final decision. Unless the court has further questions, we'd ask that the decision be reversed. Thank you, counsel. Thank you, both. We'll take the case under advisory.